## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARTIN FLYNN, derivatively on behalf of FLY-E GROUP, INC., | ) ) ) | |
| Plaintiffs, | ) ) | **Case No.** |
| v. | ) ) | |
| ZHOU (ANDY) OU, BIN WANG, SHIWEN FENG, LUN FENG, and ZANFENG ZHANG, | ) ) ) | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| Defendants, | ) ) | |
| -and- | ) ) | **JURY TRIAL DEMANDED** |
| FLY-E GROUP, INC., a Delaware Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

Plaintiff Martin Flynn ("Plaintiff"), derivatively on behalf of Fly-E Group, Inc. ("Fly-E" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, and violation of the federal securities laws. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Kurt v. Fly-E Group, Inc.* (E.D.N.Y. Case 1:25-cv-05017) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other publicly available information.

## NATURE OF THE ACTION

1.     This is a stockholder derivative action brought by Plaintiff, a stockholder of Fly-E, on behalf of the Company against the Defendants, as defined herein.  This action alleges breaches

of fiduciary duty by the Board and senior executive officers occurring from at least July 15, 2025, to August 14, 2025 (the "Relevant Time Period"). During that time the Defendants caused or allowed Fly-E to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2.      Fly-E, founded in 2018, designs, installs, and sells smart electric motorcycles, electric bikes, electric scooters, and related accessories under the Fly E-Bike brand in the United States, Mexico, and Canada. The Company offers e-mopeds, e-motorcycles, e-tricycles, and e-scooters, and e-bikes, including city, foldable, standard, and traditional bikes.  The Company sells its products through its retail stores and via its website, and also sells its products to food delivery workers through distributors.

3.      Fly-E provided stockholders material information of its overall sales revenue growth from Fly-E's e-bikes, e-motorcycles and e-scooters, making statements that projected the Company's confidence in in its positioning to become an industry leader in the urban e-mobility market by expanding its products to reach food and package delivery workers, augmenting its international sales network, and thriving in the online marketplace. While making these overwhelmingly positive statements to investors, the Company made materially false and misleading statements and omissions concerning the safety of Fly-E's lithium battery.

4.      Despite the rosy projections made to investors, Fly-E's E-vehicle sales revenue fell short as the Company's sales declined and its operating expenses increased.

5.      On August 14, 2025, the Company disclosed that it would not be able to timely file its Form 10-Q for the first quarter of fiscal year 2026. In doing so, Fly-E revealed a decrease in net revenues of 32%, "primarily driven by a decrease in total units sold." The Company attributed the decline to "recent lithium-battery accidents involving E-Bikes and E-Scooters." These incidents,

as well as closures of the Company's retail stores, were expected to cause a further decrease in retail sales revenue during Fly-E's 2026 fiscal year.

6.     Investors and analysts reacted swiftly to these revelations, causing FlyE's common stock to decline from a closing market price of $7.76 per share on August 14, 2025 to $1.00 per share on August 15, 2025, an approximately 87% drop in one day.

7.     Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

### A.     Plaintiff

8.     Plaintiff is a current shareholder of Fly-E and has continuously held Fly-E stock during all times relevant hereto and is committed to retaining Fly-E shares through the pendency of this action to preserve his standing.  Plaintiff will adequately and fairly represent the interests of Fly-E and its shareholders in enforcing its rights.

### B.     Nominal Defendant

9.     Nominal Defendant Fly-E is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 136- 4- 39th Avenue, Suite 202, Flushing, New York 11354. Fly-E common stock trades on the NASDAQ Stock Market under the symbol "FLYE."

### C.     Individual Defendants

10.     Defendant Zhou (Andy) Ou is the Company's founder and has served as CEO and the Chairman of the Board of Directors of the Company since 2018.

11.    Defendant Bin Wang has been a director of the Company since 2024.

12.    Defendant Lun Feng served as a director of the Company from 2024 until his resignation on August 21, 2025.

13.    Defendant Zanfeng Zhang served as a director of the Company from 2024 until his resignation on August 21, 2025.

14.    Defendants Ou, Wang, L. Feng, and Zhang are herein referred to as "Director Defendants."

15.    Defendant Shiwen Feng served as the CFO of the Company until her resignation on August 20, 2025.

16.    Defendants Ou and S. Feng are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b), 20(a), and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), 78t-1, 78u-4(f), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

18.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this court under 28 U.S.C. § 1391, because Fly-E is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

A.     **Fly-E's False and Misleading Statements**

21.     During the Relevant Period, Fly-E and its executive officers made materially false and misleading statements and concealed material adverse information concerning the safety of Fly-E's lithium battery. Recent lithium-battery accidents involving E-Bikes and E-Scooters caused declining sales and increased operating expenses, in contradiction with the Company's previous optimistic long-term projections.

### *July 15, 2025*

22.     On July 15, 2025, Defendants filed a Form 10-K with the SEC wherein the Company announced its financial results for the fiscal year ended March 31, 2025. The Form 10-K asserted that Fly-E maintains "strong brand reputation" for high-quality products, and that its "innovative, differentiated products and services" set them apart from competitors. The Company further detailed its strengths in the EV industry:

> **Our Strengths Early Entry into the Market:** We entered the EV market early and were able to seize the market opportunities to experience rapid growth. We started our business in 2018 and were able to leverage the potential created by the thriving E-commerce industry. Additionally, the COVID-19 lockdown further amplified the demand for online food and essential item deliveries, creating a favorable environment for the expansion and utilization of EVs, particularly E-bikes, which further accelerated our business growth.

> **Brand Reputation:** We have a strong brand reputation for consistent delivery of high-quality EV products and excellent customer service. Our brand and retail stores have become reliable business partners for most food delivery workers, especially in New York City. As a result, they have come to recognize our name and trust our services, establishing a loyal customer base for us.

**Innovative Products and Services:** We continue to offer innovative, differentiated products and services that help set us apart from our competitors. Since 2018, we have launched over 67 new products and introduced new versions to our existing products with upgrades to design, motor and battery technology. Additionally, we are developing the Fly E-Bike app, which will be used by customers to better manage and enjoy their riding experience. We are also developing the Fly E-Bike Care, an extended warranty program that will provide value-added options for our customers in the near future.

23.     The Form 10-K also discussed expansion of the Company's sales network:

Our plan to grow our business using the following key strategies:

**Enhance our position as a leader in urban mobility:** We believe we are one of the leading providers of urban mobility solutions for New York City, particularly for food and package delivery workers. We intend to leverage this first mover advantage to continue to solidify our market leadership, by enhancing our brand, continuing to innovate, growing our product and service portfolio and expanding our sales network.

**Improve brand recognition:** We will maintain our commitment to providing exceptional customer service as a means of further enhancing our brand. We will provide an enhanced shopping experience by effectively managing and upgrading our retail stores. In addition, we plan to open more flagship stores in high-traffic retail locations in New York City and other major cities in the United States to further elevate the quality of our brand messaging. Furthermore, we plan to increase our offerings of accessories, such as introducing more style options to our branded apparel, to further strengthen our customers' connection to Fly E-Bike. We also intend to collaborate with other lifestyle brands across different industries to further promote our brand image.

**Continue our innovation:** We will persist in advancing our product line by incorporating cutting-edge design, optimizing user experience and delivering optimal performance. We are developing our Fly E-Bike app, which we plan to include functions to improve the communication between our customers and our products. Additionally, we plan to launch Fly E-Bike Care in the near future, a service designed to function as an insurance policy and provide customers with continuous maintenance services beyond the manufacturer and battery warranty period.

**Expand our sales network:** We plan to expand our sales network internationally. We intend to enter selected overseas markets that offer identified growth opportunities and favorable government policies, such as South America and Europe. As of July 15, 2025, we operate one store in Canada and 19 retail stores in the United States, spanning across the states of New York, Massachusetts, Maryland, Florida, Washington D.C., California and New Jersey. We also operate

one online store at flyebike.com, focusing on selling E-motorcycles, Ebikes and E-scooters, serving customers in the United States. In addition, we plan to open a second online store focusing on selling gas bikes in the future.

**Diversify our service offerings:** We are planning to broaden our business by leveraging our existing retail stores as logistics hubs for small package delivery. We are currently trying to seek business partners, assemble a delivery team and develop an app for the delivery business.

24.     The Form 10-K also discussed results of Fly-E's operations and financial condition for the year ended March 31, 2025, disclosing a decrease in total units sold due to recent lithium battery accidents involving E-Bikes and E-Scooters. According to the Form 10-K, these battery incidents caused the Company's net revenues to decrease by 21% for the year, but it was not disclosed that the batteries involved in the incidents were Fly-E's lithium batteries. Importantly, Defendants maintained that its EV products are "subject to extensive environmental, safety and regulations, which include products safety and testing, as well as battery safety and disposal." Further, the Form 10-K stated that in January 2025 the New York City Department of Transportation chose the Company's Fly11 PRO as the official model for eligible food delivery workers to replace their current unsafe e-bikes:

**Regulatory Landscape**

We operate in an industry that is subject to extensive environmental, safety and other laws and regulations, which include products safety and testing, as well as battery safety and disposal. These requirements create additional costs and possible production delay in connection with the testing and manufacturing of our products. We also benefit from environmental regulations in our target markets which include economic incentives to purchasers of EVs and tax credits for EV manufacturers. The Governor of New York State signed a legislative package in July 2024 aimed at raising awareness about the safe use of e-bikes and lithium-ion battery products, prohibiting the sale of non-compliant batteries, requiring safety protocols and training for first responders, mandating operating manuals for e-bike retailers, and improving accident reporting and registration processes for e-bikes and mopeds. Additionally, in January 2025, the New York City Department of Transportation launched a $2 million trade-in program, allowing eligible food delivery workers to replace their unsafe e-bikes, e-mobility devices, and batteries with certified, high-quality versions. Our Fly-11 PRO was chosen for the official model of DOT and

participates in this program. From January 2025 to June 2025, we participated in this program and completed the delivery of Fly-11 Pro models to our retail partner participating in the program. While we expect relevant regulations to provide a tailwind to our growth, it is possible for other regulations to result in margin pressures.

25.     In the Company's accompanying press release issued on that same day, Defendant

Ou trumpeted Fly-E's positive growth prospects despite the revenue decline:

Fiscal year 2025 was a pivotal year for Fly-E as we navigated a complex and evolving market landscape. We achieved an improvement in gross margin to 41.1%, supported by cost reductions and more favorable pricing obtained from our suppliers, particularly in battery sourcing. We are positive about our growth prospects despite the dip in revenue caused by short-term external factors, as we have established solid reputation and continued to invest in marketing and product diversification. With a focus on innovation, we now offer a broad and growing product portfolio of over 100 models across E-motorcycles, E-bikes, and E-scooters. Our rental service, which is already active in New York City , Toronto , and Los Angeles , is gaining strong traction, and we are excited to extend it to Miami and other markets in the near future. Following our successful registered direct public offering in June 2025 , we believe we are well-capitalized to invest in inventory, vehicle production, and working capital. Looking forward, we remain focused on improving product safety, expanding our geographic reach, and investing in digital platforms such as the Go Fly app to enhance the customer experience and operational visibility. We believe our continued investment in safety, service, and innovation will prepare Fly-E for sustained long-term growth.

26.     The foregoing statements were materially false and misleading because they failed

to disclose the impact that the Company's lithium battery would have on sales revenues and the

ability to expand Fly-E's sales network.

**B.     The Truth is Revealed**

27.     On August 14, 2025, Fly-E filed with the SEC a form NT 10-Q: Notification of

inability to timely file Form 10-Q for the first quarter of fiscal year 2026.  The filing revealed a

32% decrease in Fly-E's net revenue compared to 2024.  Defendants disclosed that the prime

trigger for the decrease in revenues was a decline of "total units sold" as customers were less

inclined to purchase E-Bikes due to an "increasing number of lithium battery explosion incidents in New York."

28.     The Form 10-K had mentioned an industry-wide lithium battery debacle but had not tied the discussion of the accidents to Fly-E's lithium batteries.

29.     Investors and analysts reacted quickly to Fly-E's admission. The price of Fly-E's common stock declined from a closing market price of $7.76 per share on August 14, 2025, to a mere $1.00 per share on August 15, 2025, a decline of about 87% in just one day.

**C.     Defendants' Misconduct Has and Continues to Harm the Company**

30.     As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

31.     Fly-E's reputation and goodwill have also been damaged by the Defendants' misconduct.

**D.     The Board Breached its Fiduciary Duties**

32.     As officers and/or directors of Fly-E, the Defendants owed Fly-E fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Fly-E in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Fly-E, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

33.    Defendants, because of their positions of control and authority as directors and/or officers of Fly-E, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Fly-E's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

34.    To discharge their duties, the officers and directors of Fly-E were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Fly-E were required to, among other things:

(a)    Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)    Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)    Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are

accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)     Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

35.     The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

36.     The Board's Audit Committee is tasked with overseeing Fly-E's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Fly-E's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- Assist the Board with oversight and monitoring of:
  - the Company's accounting and financial reporting processes and the integrity and audit of the
  - Company's financial statements;
  - the Company's compliance with legal and regulatory requirements;
  - the performance of the Company's systems of internal control over financial reporting and disclosure controls and procedures; and
  - the Company's risk assessment, risk management and risk mitigation policies and programs, including matters relating to privacy and cybersecurity, and climate and the environment.

- Review the adequacy of the Company's internal control over financial reporting and the disclosure controls and procedures designed to ensure compliance with applicable law.

- Establish and oversee procedures for receiving, retaining and treating complaints received by the Company regarding accounting, internal accounting controls, auditing, and federal securities laws matters . . . .

- Consider and approve, if appropriate, the adoption of, or significant changes to, the Company's internal auditing, accounting principles . . . .

- Review and discuss with management all disclosures made by the Company concerning any material changes in the financial condition or operations of the Company.

- Regularly review, discuss with management, and oversee:
  - management's programs and policies to identify, assess, manage, mitigate and monitor significant business risks of the Company, including financial, operational, information technology, privacy, security, business continuity, legal, regulatory and reputational risk exposures, including the potential impact of those exposures on the Company's business, financial results, operations, and reputation;
  - management's risk assessment, management, mitigation and monitoring decisions, practices and activities, including the steps management has taken to monitor and control the Company's major financial risk exposures; and
  - policies and guidelines to govern the process by which risk assessment and risk management are undertaken.

37.     In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Wang, L. Feng, and Zhang (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's

business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

38.    In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

39.    The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Fly-E.

## DERIVATIVE ALLEGATIONS

40.    Plaintiff brings this action derivatively in the right and for the benefit of Fly-E to redress injuries suffered by Fly-E as a direct result of the Director Defendants' breaches of fiduciary duty.  Fly-E is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

41.    Plaintiff will adequately and fairly represent the interests of Fly-E in enforcing and prosecuting the Company's rights.

42. Plaintiff was a stockholder of Fly-E at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Fly-E stockholder.

## DEMAND FUTILITY ALLEGATIONS

43. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

44. The Fly-E Board currently has three members: Defendants Ou, Wang, and non-party Leqi Dong.

45. Plaintiff has not made any demand on Fly-E's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

46. The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

47. The Director Defendants' making or authorization of the false and misleading statements discussed above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Fly-E. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take

necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in Defendants Ou and Wang facing a substantial likelihood of liability. Defendants Ou and Wang could not fairly and fully prosecute this action or any other action concerning the misconduct described above. As Defendants Ou and Wang make up a majority of the current Board, any demand against the current Board would be futile.

**A.    Demand is Excused as to Defendant Ou**

48.    Defendant Ou is the Company's founder, CEO, and Chairman of the Board. Defendant Ou received compensation of $100,000 in 2024 and 2025 and holds 8.5% of Fly-E's common stock. Defendant Ou depends on Fly-E for his income. In addition, Fly-E stated in the Form 10-K that Defendant Ou is not independent pursuant to Nasdaq listing rules.

49.    Defendant Ou served as the Chairman of the Company's Board of Directors during the Relevant Time Period. As a director, Defendant Ou had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Ou was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

50.    Defendant Ou failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Fly-E's controls, Defendant Ou failed to protect corporate assets.

51.    Defendant Ou was an active participant in the misconduct described above. Defendant Ou signed the Form 10-K, which made false and misleading statements concerning the

impact that the Company's lithium battery would have on sales revenues and the ability to expand Fly-E's sales network. Defendant Ou therefore faces a substantial likelihood of liability.

52.    Defendant Ou is a named defendant in the Securities Class Action. Thus, Defendant Ou faces a substantial likelihood of liability.

**B.    Demand is Excused as to Defendant Wang**

53.    Defendant Wang served as a director of the Company during the Relevant Time Period. As a director, Defendant Wang had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Wang was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

54.    Defendant Wang failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Fly-E's controls, Defendant Wang failed to protect corporate assets.

55.    Defendant Wang served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for risk oversight. The Audit Committee was thus responsible for reviewing and approving Fly-E's Form 10-K filed during the Relevant Period. Defendant Wang was thus responsible for knowingly or recklessly allowing the improper statements related to the impact that the Company's lithium battery would have on sales revenues and the ability to expand Fly-E's sales network.

56.    Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services,

Defendant Wang knowingly or recklessly allowed the misconduct described above to occur. Defendant Wang knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Wang breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Wang faces a substantial likelihood of liability for these breaches, making any demand on Defendant Wang futile.

57.    Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.    Each of the Director Defendants owed and owes Fly-E the highest obligations of loyalty, good faith, due care, and oversight.

60.    Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

61.    The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

62.    In addition, the Director Defendants further breached their fiduciary duties owed to Fly-E by willfully or recklessly making and/or causing the Company to make false and misleading

statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose the impact that the Company's lithium battery would have on sales revenues and the ability to expand Fly-E's sales network. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

63.     The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

64.     As a direct and proximate result of the breaches of duty alleged herein, Fly-E has sustained and will sustain significant damages.

65.     As a result of the misconduct alleged herein, these Defendants are liable to the Company.

66.     Plaintiff, on behalf of Fly-E, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty
### (Derivatively Against the Officer Defendants)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owed Fly-E the highest obligations of loyalty, good faith, due care, oversight, and candor.

69.     The Officer Defendants breached their fiduciary duties owed to Fly-E by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose the impact that the Company's lithium battery would have on sales revenues and the ability to expand Fly-E's sales network.  The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

70.     As a direct and proximate result of the breaches of duty alleged herein, Fly-E has sustained and will sustain significant damages.

71.     As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

72.     Plaintiff, on behalf of Fly-E, has no adequate remedy at law.

## COUNT III

### Gross Mismanagement
### (Against All Defendants)

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

75.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

76.     As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Fly-E has sustained and will sustain significant damages.

77.     As a result of the misconduct alleged herein, the Defendants are liable to the Company.

78.     Plaintiff, on behalf of Fly-E, has no adequate remedy at law.

### COUNT IV

### Violations of Section 10(b) and Rule 10b-5 of the Exchange Act
### (Against All Defendants)

112.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

113.     During the Relevant Time Period, the Defendants engaged and participated in a continuous course of conduct designed to falsify the Company's reports filed with the SEC.

114.     The Defendants employed devices, schemes, and artifices to defraud while in the possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Fly-E not misleading.

115.     The Defendants, as directors and officers of the Company, acted with scienter during the Relevant Time Period, in that they either had actual knowledge of the scheme and the

misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Defendants were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

116.    By virtue of the foregoing, the Defendants have violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

## **COUNT V**

### **Violations of Section 20(a) of the Exchange Act**
### **(Against All Defendants)**

117.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

118.    The Defendants, as directors and officers of the Company, were, at the time of the wrongs alleged herein, controlling persons of Fly-E and each of the officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Defendants had the power and influence, and exercised the same, to cause Fly-E to engage in the illegal conduct and practices complained of herein.

119.    Plaintiff, on behalf of Fly-E, has no adequate remedy at law.

## **COUNT VI**

### **For Contribution Under Sections 10(b) and 21D of the Exchange Act**
### **(Against Defendants Ou and S. Feng)**

120.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

121.    The conduct of Defendants Ou and S. Feng, as described herein, has exposed the Company to significant liability under various federal securities laws.

122.    Fly-E, along with Defendants Ou and S. Feng, are named as defendants in the Securities Class Action that alleges and asserts claims arising under the federal securities laws. Fly-E is alleged to be liable to private persons, entities, and/or classes by virtue of many of the same facts alleged herein.

123.    If the Company is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Ou and S. Feng as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. Fly-E is entitled to contribution and indemnification from Defendants Ou and S. Feng in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

124.    As officers and directors, Defendants Ou and S. Feng had the power or ability to, and did, control or influence, either directly or indirectly, Fly-E's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

125.    Defendants Ou and S. Feng are liable under § 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

126.    Defendants Ou and S. Feng, through their misconduct, have damaged the Company and are liable to the Company for contribution.

127.    Plaintiff, on behalf of Fly-E, has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A.        Declaring that Plaintiff may maintain this derivative action on behalf of Fly-E

and that Plaintiff is a proper and adequate representative of the Company;

B.    Against all of the Defendants and in favor of Fly-E for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.    Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.    Awarding Fly-E restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.    Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 28, 2025                    **ROWLEY LAW PLLC**


*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*